STATE *ex rel. v.* BANK OF COMMERCE & TRUST COMPANY.*

(*Nashville.*   December Term, 1920.)

1. **CHARITIES.** Charitable trust held deferred until life tenant's death.

A will giving the wife of testator a life interest in his real estate and giving the personal property above the amount necessary to pay debts and legacies and the remainder of the real property to a trustee to establish an old men's home, which provided that upon the death of the wife the estate should be invested in the home, empowered the sale of real estate only after the wife's death and provided for the investment of the personal property in interest-bearing securities until the wife's death, clearly defers the establishment of the home until after the death of the wife, though meantime the ex-Confederate soldiers, for whose benefit the home was especially intended, would be rapidly passing away. (*Post, pp.* 284, 285.)

Code cited and construed: Secs. 5165-87 (S.).

2. **WILLS.** Trust cannot be accelerated before beneficiaries take interest,

Where the beneficiaries of the trust take no interest therein until the time for investment comes so that they have no estate to be accelerated, the equitable doctrine of acceleration of an estate or trust cannot be applied, especially where the exigency of the beneficiaries was one anticipated by testator. (*Post, pp.* 285, 286.

Case cited and distinguished: Bennett v. Trust Co., 127 Tenn., 131.

3. **CHARITIES.** Trustees not required to account before time for investment.

The trustees, under a will directing the establishment of an old men's home upon the death of testator's wife, cannot be required to account for the funds in their hands prior to the time for such

*On power of court to hasten enjoyment of trust fund, see note in 46 L. R. A. (N. S.) 43,

State ex rel. v. Bank of Commerce & Trust Co.

establishment at the suit of a District Attorney General, in the absence of any allegation of mismanagement or misapplication of the trrust funds. (*Post, p.* 286.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. F. H. HEISKELL, Chancellor.

EDGINGTON & EDGINGTON, for appellant.

WILSON & ARMSTRONG, for appellee.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

This action begun by bill in chancery was brought by the district attorney-general of Shelby county in the name of the State, upon the relation of private individuals, to bring the defendant bank and trust company, as trustees of a fund intrusted to their care by the will of William L. Graham, deceased, to account for the management and disposition of said funds, alleging that said funds were given in trust for a charitable purpose, and alleging that the trustees were not devoting said funds for the benefit of those interested therein.

The bill was brought upon the idea that a court of equity could and would enforce the trust created by the will for the charitable purposes aforesaid and administer the same so as to carry out the trust, and under the authority of section 3409 to 3431 of the Code (Shannon's Code, sections 5165-5187).

These sections of the Code provide that an action lies under the provisions of this chapter "to bring the  .  .  . trustees of funds given for a public or charitable purpose to an account for the management and disposition of property intrusted to their care;  to remove such officers or trustees on proof of misconduct; to prevent malversation, peculation, and waste; to set aside and restrain improper alienations of such property or funds, and to secure them for the benefit of those interested; and generally to compel faithful performance of duty."

The jurisdiction of the court in a proceeding of this sort to deal with the subject-matter of the bill in this case is ample and is not questioned, but the right of the complainants to the relief sought was challenged by the demurrer of the defendant to the bill as being insufficient to entitle complainant to the relief sought.   This demurrer was sustained by the chancellor.   His action was affirmed by the court of civil appeals, and the decree of that court is before us for review upon petition for *certiorari.*

The portion of said will which is material to the issues raised by this bill reads as follows, to wit:

"I hereby will and bequeath all the residue of my real property to my said wife for and during her natural life,

subject to payment of the foregoing legacies and bequests, which are made a charge thereon, as well as any personalty which may remain over after payment of the bequest of personalty to my said wife.

"The remainder of my estate upon the death of my said wife shall be invested by my executor and trustee in a home for aged and indigent men, to be located in the city of Memphis or in Shelby county, in the State of Tennessee.

"I desire that the institution be a chartered one and that it be governed by the usual rules governing similar institutions. If it be thought wise by the directors and officers of the Bank of Commerce & Trust Company, which company I make my executor and trustee, to donate whatever sum may result from this bequest, to the institution now existing in the city of Memphis and known as the 'Old Men's Home,' it would fulfill my purpose for them to do so, provided that it is a chartered institution and under what they consider good management.

"In the event that it is not considered wise by the directors and officers of the Bank of Commerce & Trust Company to donate this fund to the now existing 'Old Men's Home,' above named, they shall have power to buy lands and erect buildings for an 'Old Men's Home' such as the amount of the fund will justify, or they may purchase lands already built upon and they may purchase furniture and equipments for same.

"It is my wish that any surviving ex-Confederate soldiers, who are indigent, may have preference in receiving benefits from this fund.

"I hereby constitute and appoint the Bank of Commerce & Trust Company, a chartered institution, of the city of Memphis and State of Tennessee, executor of this, my last will and testament, and also to be the trustee of my real property.

"It, as trustee, is charged with the duty of collecting the rents and profits of my real property (except the homestead and small farm in Georgia, which are bequeathed in the instrument in fee simple) and of keeping the same in repair and insured and paying the taxes, and of paying the net proceeds to my said wife, during her natural life.

"Should my personal property exceed in value the aggregate amount of the bequests in this instrument and the necessary expense of the administration, then said trustee shall invest the excess in interest-bearing securities and hold said securities until such time as the fund from my real estate be available.

"My said trustee and executor shall have power to sell real property to pay debts and legacies and bequests and to distribute such legacies and bequests among the legatees and parties provided for herein.

"Power of sale is hereby conferred on my executor and trustee or its successor upon the death of my said wife, to sell all my real property and reinvest proceeds in a home as aforesaid.

"Given under my hand and seal, this August 22, 1906.

"W. L. GRAHAM, [Seal.]"

The bill alleges that defendant, upon the death of said Graham, qualified as executor and paid the debts and

several thousand dollars in legacies, and it made its final settlement as executor at the December term, in the year 1914, of the probate court of Shelby county, which settlement was confirmed by the probate court at that time, as seen from the order of confirmation of the settlement seen in Minute Book 105, p. 47, in which it is recited that it has on hands a balance of $43, 871.70.

The bill further alleges that the testator left a large amount of valuable real estate, which, subject to the life estate of the testator's wife, who is still living, constitutes a part of said trust property.

The contention is that under the will the personal property passing under the provision may and should be immediately devoted to the purposes of the trust. This contention is based upon the grounds (1) that the will should be so construed, and (2) that the trust should be accelerated, upon the theory that to defer it would probably result in a failure of the principal purpose expressed in the will to provide a home for indigent ex-Confederate soldiers, because in the very course of nature all ex-Confederate soldiers are growing old, and soon will have passed away.

In any event, it is said complainants are entitled to have an account taken and stated and spread upon the minutes of the court.

The substance of the demurrer, stated therein in four grounds, is that the bill shows that the trust created by the will to invest the estate devised in a home for aged and indigent men, can not be enforced and complied with,

under the provisions of the will until after the death of the testator's widow, and that the character of the investment is left to the discretion of the trustees, and that this discretion cannot be exercised until after the death of the widow.

Whether the demurrer is well taken depends upon the construction of that portion of the will quoted.

The funds to be devoted to the trust, as shown by the will, consist of personal property, in which no other person has any interest, and of real estate incumbered by a life estate in favor of the widow.

Complainants are confronted at the very outset with the specific provision that the "remainder of my estate upon the death of my wife shall be invested," etc., and with the further direction that the personal property shall be invested in interest-bearing securities to be held by the trustees until such time as the funds from the real estate are available. The real estate could only be sold and funds therefrom made available after the death of the testator's widow, not merely because the widow had been given a life estate therein, but the power of sale conferred upon the trustee could not by the very terms of the will be exercised until the widow's death; and not until then could the proceeds be invested in the home.

There might be some plausibility in the complainants' contention if there were no other provisions in the will than that which vests the estate in the trustee upon the death of the wife. It might well be argued that thereby the testator was defining the extent of the wife's estate,

but the subsequent provisions that the personal property is to be invested in securities and held until the real estate is sold, and limiting the power to sell the real estate until the death of the wife, and thereafter providing for the investment in the home, make it quite clear that the intention of the testator was to have the investment made in the home after his wife's death, in order that his entire residuary estate might then be devoted to the uses prescribed in connection with the home for aged and indigent men. The solicitude of the testator for Confederate soldiers and the knowledge that they are rapidly passing away cannot have the effect to change this plain expression of the testator's intention.

The bill does not make a case falling within the equitable doctrine by which an estate or trust can be accelerated. The beneficiaries in the trust do not take any interest until the time for the investment comes, which is after the widow's death, and therefore they have no estate to be accelerated.

In the case of *Bennett* v. *Trust Co.*, 127 Tenn., 131, 153 S. W., 842, 46 L. R. A. (N. S.), 43, Ann. Cas., 1914A, 1045, this court after some discussion of this doctrine, said:

"As we conceive the true rule to be, indicated above, the court will only so direct the use of such income in behalf of a beneficiary where an exigency, nonexistent at the creation of the trust, has arisen, which exigency is one not then anticipated by the testator; for, if the testator saw or foresaw the plight of his beneficiary, and yet intended that his gift should be withheld until she matured

in age, we would deem it to be beyond the power of the court to alter a purpose thus declared."

We cannot assent to the contention that, notwithstanding the foregoing conclusion, complainants may have an accounting by the trustee. Such a right could only be invoked, if at all, upon an averment that the trust property was being mismanaged or misapplied, or by the conduct of the trustee being dissipated or concealed. No reason is alleged why the relators, any public official, private citizen, or beneficiary cannot for the asking ascertain the exact state of account of the trustee. There is no allegation of insolvency, nor any other averment that would justify the court in ordering an accounting in this case, in advance of the time fixed by the will for devoting the trust funds to the charitable uses mentioned.

There is no error in the decree of the court of civil appeals, and the same is affirmed. Complainants will pay all costs of the cause.